UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONNY LOPEZ<br><br>                    Petitioner,<br><br>        -v-<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | No. 20-cv-4931 (RJS) |
| UNITED STATES OF AMERICA<br><br>        -v-<br><br>RONNY LOPEZ,<br><br>                    Defendant. | No. 16-cr-719-3 (RJS)<br><br><u>MEMORANDUM AND ORDER</u> |

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

Petitioner Ronny Lopez, who is currently incarcerated, brings this petition pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence under 18 U.S.C. § 924(c), which he asserts are invalid in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), and the Second Circuit's opinion in *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019). (No. 20-cv-4931 (RJS) Doc. No. 1 at 2.)[1]  For the reasons set forth below, the petition is DENIED.

---

[1] Unless otherwise indicated, all docket citations refer to the docket in Lopez's criminal case, *United States v. Lopez*, No. 16-cr-719-3 (RJS).

## I. Background

In September 2016, Lopez and five others conspired to rob a Bronx drug dealer of two kilograms of cocaine at gunpoint.[2]  (PSR ¶¶ 26, 29, 33, 37.)  Lopez was recruited to participate and supply a vehicle for the robbery.  (*Id.* ¶ 29.)  He, in turn, recruited his uncle to participate and supply the Chevrolet Suburban to be used for the robbery.  (*Id.*)  According to the plan, one co-conspirator was to meet the victim and pretend to order and inspect the drugs while two others would surreptitiously approach with a firearm and take the drugs.  (*Id.* ¶ 36.)  Lopez was to act as a lookout and to provide protection in the event things went awry.  (*Id.* ¶ 33.)  The group agreed to split the stolen narcotics amongst themselves, and one co-conspirator planned to have Lopez sell his share of the narcotics for him.  (*Id.* ¶ 34.)  Unbeknownst to them, however, one of the co-conspirators was a confidential informant working at the direction of the Drug Enforcement Administration.  (*Id.* ¶ 24.)

On September 28, 2016, the group drove in the Suburban to the parking lot of a Target store, where the robbery was to take place.  (*Id.* ¶¶ 35–38.)  Lopez was in the front passenger seat.  (*Id.* ¶ 38.)  Once the Suburban arrived, law enforcement officers converged on the group and apprehended them.  (*Id.* ¶¶ 39–40.)  Upon approaching the group, officers heard a loud metallic noise that sounded like a "metal object hitting the ground."  (*Id.* ¶ 39.)  They later found a loaded semiautomatic handgun outside the passenger side of the Suburban.  (*Id.*)

On October 27, 2016, a grand jury returned an indictment charging Lopez and the other co-conspirators with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 ("Count One"); conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 ("Count Two");

---

[2] The facts are drawn from Lopez's presentence investigation report ("PSR") (Doc. No. 225).  In making its ruling, the Court has also considered Lopez's motion to vacate (Doc. No. 282) and the government's letter in opposition to the motion (Doc. No. 285), as well as all attached exhibits.

and carrying and possessing a firearm in furtherance of both the robbery conspiracy in Count One and the narcotics conspiracy in Count Two, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and § 2 ("Count Three").  (Doc. No. 18 at 1–3.)

On April 28, 2017, Lopez pleaded guilty to Count One and Count Three pursuant to a plea agreement with the government.  (Doc. No. 285, Ex. 1.)  During the plea hearing, Magistrate Judge Fox initially described the Count Three charge as use of "a firearm in connection with a violent offense" (Doc. No. 82 at 2), but he later explained to Lopez that Count Three was predicated on "a crime of violence and a drug trafficking offense," (*Id.* at 8).  The government, in describing the elements of the crime charged in Count Three at the plea hearing, listed only the elements for the Hobbs Act robbery conspiracy in Count One.  (*Id.* at 13.)  At the same hearing, Lopez admitted that he "agreed with others to rob people [he] believed [were] drug dealers, and . . . somebody had a firearm." (*Id.* at 17.)  When Magistrate Judge Fox asked if the person had the firearm to further the efforts to commit the robbery, Lopez answered in the affirmative.  (*Id.*)

On November 8, 2018, the Court sentenced Lopez to an aggregate term of 120 months' imprisonment (60 months on Count One and 60 months on Count Three, to be served consecutively) and three years' supervised release.  (Doc. No. 200 at 44.)  Although Lopez sent a letter to the Court indicating his desire to appeal his conviction (Doc. No. 204), he later clarified through counsel that he would not appeal his conviction (Doc. No. 205), consistent with the appeal waiver contained in the plea agreement.

On June 24, 2020, Lopez, represented by counsel, filed a motion pursuant to 28 U.S.C. § 2255 to vacate his section 924(c) conviction and sentence.  (Doc. No. 282.)  Lopez argues that his section 924(c) conviction is invalid in light of *Davis* and *Barrett*, which established that conspiracy to commit Hobbs Act robbery is not a valid crime-of-violence predicate for a

section 924(c) conviction.   (*Id.* at 2.)   Consequently, Lopez argues that *Davis* should apply retroactively to invalidate his conviction.   (*Id.* at 5.)   The government filed a letter opposing Lopez's motion.   (Doc. No. 285.)

## II.  LEGAL STANDARD

28 U.S.C. § 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."   28 U.S.C. § 2255(a).   Relief under section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."   *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and quotation marks omitted).

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."   *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted).   The "procedural default rule" constitutes one such rule and provides that a defendant may not substitute a collateral challenge for an appeal unless he can first demonstrate either "cause for failing to raise the claim at the appropriate time and prejudice from the alleged error," *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993), or that he is "actually innocent," *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citation omitted).

As relevant here, "cause" can be established by demonstrating the futility of asserting an argument at the time of appeal. *Id.* at 622–23. "[F]utility, however, 'cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.'" *Gupta v. United States*, 913 F.3d 81, 84–85 (2d Cir. 2019) (quoting *Bousley*, 523 U.S. at 623). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *United States v. Thorn*, 659 F.3d 227, 233 (2d Cir. 2011) (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486–87 (1986).

As for prejudice, that requirement is met by establishing "actual prejudice resulting from the errors of which [Petitioner] complains," *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (citation omitted), *i.e.*, "that there is a reasonable probability that, but for the [alleged] error, the result of the proceeding would have been different," *Strickland v. Washington*, 466 U.S. 668, 694 (1984). While the alleged error need not have "more likely than not altered the outcome," *id.* at 693, prejudice *does* require a petitioner to show that "[t]he likelihood of a different result [was] substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011). In other words, the error must have resulted in "substantial disadvantage, infecting [the] entire [hearing] with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted).

An alternate pathway to overcoming procedural default is "actual innocence." *Bousley*, 523 U.S. at 622. The Supreme Court has explained that "'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623. "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable

juror would have convicted him" had the case gone to trial.  *Id.* (citation and quotation marks omitted); *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (emphasizing that this standard applies even if the defendant pleaded guilty).  The Supreme Court has emphasized that "[i]n cases where the [g]overnment has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges."  *Bousley*, 523 U.S. at 624.  Furthermore, "reviewing courts should assess actual innocence claims in light of all the evidence regardless of admissibility but with proper consideration for the weight the evidence can bear in light of relevance and reliability."  *Hyman v. Brown*, 927 F.3d 639, 659 (2d Cir. 2019) (quotation marks omitted).

## III. DISCUSSION

Lopez argues that his section 924(c) conviction is invalid in light of *Davis* and *Barrett*, which established that conspiracy to commit Hobbs Act robbery is no longer a valid predicate for a section 924(c) conviction.  (Doc. No. 282 at 2.)  Lopez also asserts that "[t]he record is clear that the predicate for [his section] 924(c) conviction was Count 1: conspiracy to commit Hobbs Act robbery."  (*Id.* at 5.)  But Lopez makes no argument addressing the procedural requirements of his motion or explaining why the alternative predicate crime underlying his section 924(c) conviction, the narcotics conspiracy in Count Two, is insufficient to sustain his conviction.  Notwithstanding the holdings of *Davis* and *Barrett*, which invalidated conspiracy to commit Hobbs Act robbery as a predicate for a section 924(c) conviction, Lopez's claim is procedurally barred because he can show neither (1) cause and prejudice nor (2) actual innocence of the section 924(c) charge.  In fact, Lopez has demonstrated neither cause nor prejudice.

First, Lopez cannot establish – indeed, has never attempted to establish – cause for defaulting on his *Davis* claim.  The "cause" cannot be simply that *Davis* had not yet been decided,

as the Supreme Court has made clear that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)). The Supreme Court explained in *Davis* that its holding was a logical extension of two other cases invalidating statutory provisions similar to section 924(c): *Johnson v. United States*, 576 U.S. 591 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). *See Davis*, 139 S. Ct. at 2325–26. *Johnson* was decided before Lopez was even indicted, and both cases were decided prior to the Court's entering judgment. In other words, Lopez had "the tools to construct [a] constitutional claim" challenging section 924(c) prior to this collateral attack. *Engle*, 456 U.S. at 133. He thus has no cause for waiting as long as he did, and no cause-and-prejudice justification for his procedural default. *See, e.g.*, *Chambers v. United States*, Nos. 20-cv-1457 (LGS), 13-cr-345 (LGS), 2021 WL 5357472, at *5 (S.D.N.Y. Nov. 17, 2021) (holding that petitioner could not establish cause for not raising a *Davis* claim); *Mayes v. United States*, Nos. 12-cr-385 (ARR), 17-cv-6789 (ARR), 2019 WL 6307411, at *2 (E.D.N.Y. Nov. 25, 2019) (same).

Though of course failure to show cause is, by itself, enough to prevent Lopez from showing cause *and* prejudice, he also cannot show that he suffered prejudice from the alleged *Davis* error. In *United States v. Dussard*, 967 F.3d 149 (2d Cir. 2020), the Second Circuit held that a section 924(c) conviction predicated on Hobbs Act robbery conspiracy remained valid even after *Davis* because the indictment identified a narcotics trafficking conspiracy as an alternate predicate. *Id.* at 157–58.[3] Pointing to the appellant's stipulation at the plea hearing, *id.* at 156 ("I conspired

---

[3] While the *Dussard* court conducted plain-error review, the standard used to determine whether the appellant's substantial rights were affected mirrors the standard for prejudice in the procedural default context. *Dussard*, 967 F.3d at 156 ("An error affects the defendant's substantial rights when it is prejudicial – that is, when there is a reasonable probability that the error affected the outcome of the proceeding.") (citation omitted).

with individuals who possessed firearms in order to steal narcotics at gun point . . . ."), and the PSR's findings that he planned to sell the drugs for profit, the Second Circuit concluded that the appellant "would have had little genuine hope of being acquitted of the . . . drug trafficking conspiracy after a trial," *id.* at 157.  The *Dussard* court also noted that "nothing about [the appellant's] plea or the plea hearing itself provides any basis for an argument that he was willing to plead guilty to [the section 924(c) charge] only if it was tied to the charge of Hobbs Act conspiracy . . . instead [of] the drug trafficking predicate," which has "no difference in the offense of conviction or in the punishment."  *Id.* at 158.  The Second Circuit thus affirmed the conviction, stating that the appellant "ha[d] not shown any reasonable probability that he would not have pleaded guilty to [the section 924(c) charge]" had *Davis* been in effect at that time.  *Id.* at 159.

Here, Lopez admitted during the plea hearing that he "agreed with others to rob people [he] believed [were] drug dealers" at gunpoint (Doc. No. 82 at 17), and the PSR – to which neither party objected – represented that Lopez planned to receive a share of the stolen drugs and was expected to sell a co-conspirator's share of the narcotics for him (PSR ¶ 34).  So, like Dussard, Lopez "would have had little genuine hope" of prevailing at trial on the narcotics trafficking conspiracy charge, *Dussard*, 967 F.3d at 157, and there can be no doubt that the government would have pursued a section 924(c) conviction predicated on the narcotics trafficking conspiracy alone had *Davis* been in effect at that time.  Furthermore, Lopez has not provided any evidence to suggest that he would have insisted on going to trial if the plea offer required him to plead guilty to the section 924(c) charge predicated solely on the narcotics trafficking conspiracy.  Indeed, since the punishment would have been identical to that set forth in the plea agreement, it defies logic to think that Lopez had any reason to discriminate between the two predicates to which he pleaded

guilty.  Therefore, there is no reasonable probability that "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

Nor has Lopez established that he is actually innocent of the section 924(c) count predicated on the charged narcotics conspiracy.  To meet the high bar for actual innocence, Lopez must demonstrate that "it is more likely than not that no reasonable juror would have convicted him" of the section 924(c) charge predicated on the narcotics conspiracy had the case gone to trial, *Bousley*, 523 U.S. at 623 (citation omitted), to be determined "in light of all the evidence *regardless* of admissibility," *Hyman*, 927 F.3d at 659 (emphasis added) (quotation marks omitted).  Lopez cannot meet this burden.  As discussed, he admitted at his allocution that the robbery conspiracy involved an agreement to rob a drug dealer at gunpoint (Doc. No. 82 at 17), and the PSR provided that he planned to receive a share of the narcotics and was expected to sell at least one co-conspirator's share.  (*Id.* ¶ 34.)  Accordingly, while Hobbs Act conspiracy is no longer a valid predicate for his section 924(c) conviction after *Davis* and *Barrett*, the record as a whole indicates that Lopez used a firearm in furtherance of a narcotics conspiracy, which is all that is required for him to be convicted for his section 924(c) violation in Count Three.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Lopez's motion under 28 U.S.C. § 2255 is DENIED.  In addition, because Lopez has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability.  *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this

Memorandum and Order would not be taken in good faith and, therefore, Lopez may not proceed in forma pauperis. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 282 in No. 16-cr-719-3 (RJS), to terminate the motion pending at Doc. No. 1 in No. 20-cv-4931 (RJS), and to close No. 20-cv-4931 (RJS).

SO ORDERED.

Dated:      March 29, 2022
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation